**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

∗∗∗

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>vs.<br><br>GREGORY J. OLSON,<br><br>                    Defendant. | Case No. 2:12–cr–327–APG–VCF<br><br>**ORDER**<br><br>MOTION TO COMPEL (#71) |

   This matter involves the United States' prosecution of Gregory Olson for fraud. *See* (Indict. #1[1]). Before the court is the government's Motion to Compel (#71). Mr. Olson opposed (#72) and the government replied (#73). For the reasons stated below, the government's motion is denied.

**BACKGROUND**

   On August 27, 2002, the Nevada Attorney General's Office issued a press release:

> Attorney General Frankie Sue Del Papa announced today that Gregory J. Olson plead guilty to two felony counts of Securities Fraud Committed Against a Person 65 Years of Age or Older. As part of his Plea Agreement, Olson agreed to pay restitution to his victims in the amount of $457,500. The victims include three women and three men, all from Las Vegas, over the age of 65.

(Gov't's Mot. (#71) at Ex. A).

   Sometime later, the Honorable Lee A. Gates, Clark County District Judge, sealed the records relating to the Attorney General's investigation under Nevada Revised Statute § 179.285. In pertinent part, the statute states,

> All proceedings recounted in the record are deemed never to have occurred, and the person to whom the order pertains may properly answer accordingly to any inquiry, including, without limitation, an inquiry relating to an application for employment, concerning the

---

[1] Parenthetical citations refer to the court's docket.

1

> arrest, conviction, dismissal or acquittal and the events and proceedings relating to the arrest, conviction, dismissal or acquittal.

NEV. REV. STAT. § § 179.285(1)(a). Once Mr. Olson's records were sealed, Nevada Revised Statute § 179.275 governs. In pertinent part, it provides,

> Each agency of criminal justice and each public or private company, agency, official or other custodian of records named in the order, and that person shall seal the records in his or her custody which relate to the matters contained in the order, shall advise the court of compliance **and shall then seal the order**.

NEV. REV. STAT. § 179.275(2) (emphasis added).

Ten years later, on September 5, 2012, a federal grand jury returned an indictment against Mr. Olson alleging that he "defaud[ed] the [Amazing Grace Lutheran] Church" by obtaining approximately six mortgages in the Church's name totaling $1.75 million. (Indict. (#1) at ¶¶ 4–5). This conduct allegedly began in 2006. (Mot. to Compel (#71) at 2:20).

Three years later, in February of 2015, the Federal Bureau of Investigation contacted the Nevada Attorney General's Office in order to obtain a copy of the criminal file regarding Mr. Olson's 2002 prosecution in state court. *See* (*id*. at 2:6–8). The Attorney General's Office confirmed that the file existed but stated that the U.S. Attorney's Office would have to issue a subpoena to obtain the records. (*Id*.)

A subpoena was issued and a copy of the file was prepared but another roadblock appeared: when preparing Mr. Olson's file for production, the Attorney General's Office discovered a copy of Judge Gates' order, stating that the records are sealed and the underlying proceedings are "deemed never to have occurred." (*Id*. at 2:12–18). The Attorney General's Office then produced a copy of the order to the U.S. Attorney's Office, "expressed a continued willingness" to produce Mr. Olson's file, but stated that a court order would be necessary. (*Id*.)

On March 26, 2015, the government filed the instant Motion to Compel. It requests an order compelling the Attorney General's Office to produce Mr. Olson's state court records, despite Judge Gates' sealing order.

**DISCUSSION**

The parties' filings present one question: whether a federal district court may relieve a nonparty of the consequences of disobeying a state court order. Here, the U.S. Attorney's Office asks the court to compel the Nevada Attorney General's Office to produce documents despite the existence of a state court order, which should not have been produced, *see* NEV. REV. STAT. § 179.275(2), and deems matters related to the order "never to have occurred." *See* NEV. REV. STAT. § 179.285(1)(a).

The government's motion is denied. Our Constitution apportions limited powers to the federal government and all remaining powers to the states or the people. *See, e.g.*, U.S. Const. art. IV, § 8; amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."). The sharing of power between the federal and state governments is known as federalism; and one government's decision to not exercise its power out of respect for another government's power is called comity. Federalism and comity underpin a basic doctrine of law known as abstention.

When a federal court has the power to decide a dispute that would be better decided by a state court, the federal court abstains from exercising its power out of respect for the state court. *See, e.g.*, *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 501 (1941) ("These cases reflect a doctrine of abstention appropriate to our federal system whereby the federal courts, 'exercising a wise discretion', restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary."). Abstention is central to maintaining our nation's balance of power. It reflects,

> a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Younger v. Harris*, 401 U.S. 37, 44 (1971). Federalism, comity, and abstention underpin a fundamental rule of law that controls here: a federal trial court cannot review, reconsider, or modify a decision by a state trial court. *See, e.g.*, *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). "To do so would demonstrate an unwarranted contempt for the ability of state appellate courts." *Chem. Bank v. City of Bandon, Or.*, 562 F. Supp. 704, 706 (D. Or. 1983) (internal quotation marks omitted).

The government disregards these tenets. It argues that the Supremacy Clause authorizes a federal court to enter an order that would relieve a nonparty of the consequences of disobeying a controlling state court order. The court disagrees. The Supremacy Clause concerns the U.S. Constitution, treatises, and acts of legislation passed by the U.S. Congress and signed by the President. *See* U.S. Const. art. VI, cl. 2. The Supremacy Clause does not render an interlocutory order entered by a federal judge "the supreme law of the land." *See id*.[2]

The court is similarly unpersuaded by the government's arguments that the court should enter an order compelling the Attorney General's Office to produce sealed documents because the failure to do so would cause delay and the U.S. Federal Sentencing Guidelines permit a district judge to consider sealed state court records when imposing a sentence. Judges may not disregard the law for the sake of expediency.[3] Nor will this court entertain the government's argument regarding the U.S. Federal

---

[2] The Supremacy Clause states: "[t]his Constitution, and the Laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding."

[3] Neither party argued that Mr. Olson's Speedy Trial rights or other constitutional rights would be infringed if the court denied the government's motion and required the government to petition the state court to review the sealing order.

Sentencing Guidelines.[4] Mr. Olson is not being sentenced; he has not been found guilty; he has not been tried; he is presumed innocent.

The government also contends that the court should enter an order compelling the Attorney General's Office to produce sealed documents because the government is not moving to "compel a state court to take certain action." (Gov't Reply (#73) at 4:3–4). This argument is inapposite. A federal district court cannot review a decision by a state trial court. *See Feldman*, 460 U.S. at 482; *Chem. Bank*, 562 F. Supp. at 706. It necessarily follows that a federal district court cannot relieve the Attorney General's Office or the U.S. Attorney's Office from the consequences of disobeying a state court order.

If the Nevada Attorney General's Office wishes to produce Mr. Olson's file to the U.S Attorney's Office, then it may comply with the government's subpoena and produce the files. However, this court cannot enter an order that would purport to immunize a person from the consequences of that decision.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Government's Motion to Compel (#71) is DENIED.

IT IS SO ORDERED.

DATED this 29th day of April, 2015.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

---

[4] The government raised this argument for the first time at oral argument. This deprived Mr. Olson of an opportunity to prepare to oppose this argument. Therefore, the court was under no obligation to consider the argument when deciding the motion. *See, e.g.*, *United States v. Gianelli*, 543 F.3d 1178, 1184 n. 6 (9th Cir. 2008).